*L. M. Campbell,* for appellee.

---

## BARKALOW *v.* PFEIFFER.

STATUTE OF FRAUDS.—*Contract.—Acceptance.—Delivery.*—Where a party to a parol contract examines and approves of work done and materials furnished for him, pursuant to said contract, and the article made is subsequently placed, by his order, at a place in the possession of said party, there is sufficient evidence of delivery and acceptance to take the case out of the statute of frauds.

SAME.—*Measure of Damages.*—In such case, if the work done and materials furnished did not exactly conform to the contract, it would, at most, only entitle the party accepting to a deduction from the contract price.

APPEAL from the Bartholomew Common Pleas.

DOWNEY, J.—This was a suit by the appellant against the appellee on a complaint based on the following account:

Mr. Peter Pfeiffer to John S. Barkalow.                    Dr.

For one marble slab and marble base.....................$135.00
Cutting champer on tombstone bases....................   2.50
Cutting verse on marble slab...............................  10.00

Building foundation to gravestones...................... 5.00
Removing Jacob Lochenour's stone from old yard to
    new, and setting up same............................. 10.00

$162.50

The defendant pleaded, first, a general denial; and, second, as to the item of tombstones, marked base and slab, one hundred and thirty-five dollars, says that he bargained for the purchase of said tombstones by parol, not in writing, with John D. Sims and George W. Buxton, and they turned over said contract to plaintiff; there never was any earnest money paid to bind the said bargain, or paid on said contract in any manner, nor was said tombstone, or any part thereof, ever delivered to, and accepted by, defendant, and hence said contract was void under the statute of frauds.

The plaintiff replied by general denial to the second paragraph of the answer.

The court tried the cause without a jury, and found for the plaintiff, and assessed his damages at seventeen dollars and fifty cents.

The plaintiff moved for a new trial, for these reasons: first, because the finding of the court is contrary to law; second, because the finding of the court is not sustained by, and is contrary to, the evidence; third, because the finding of the court is not sustained by sufficient evidence.

This motion was overruled, and the plaintiff excepted and put the evidence in the record. The court rendered judgment in favor of the plaintiff for the damages assessed, and against him for costs. The plaintiff appeals, and has assigned for error the overruling of the motion for a new trial and the rendition of the judgment for costs against him.

The evidence in the case was as follows:

John D. Sims testified, that he and George W. Buxton originally made the contract for the tombstone with defendant; that it was to be for his mother-in-law, and to be similar to the one over the grave of his father-in-law; to be delivered at the grave; and that they were to assist in setting

it up; all for one hundred and thirty-five dollars; defendant to furnish the limestone base, and make all other arrangements for setting up; the ordinary inscription only, including the name of deceased, age, and date of death to be put on, besides the ornamental work, like that on the father-in-law's tombstone. After making contract and furnishing material for the work, Sims and Buxton sold out their entire stock and materials and contracts, including this, to plaintiff, who did the work; witness saw the job before and after it was set up, and thinks it was as good, and, if anything, a better job than the other over the father-in-law's grave; the marble seemed better, and the work was better; this is a little taller than the other, but the difference is scarcely perceptible; this difference results from the base being an inch thicker than the base of the other; the slab was also an inch thicker; the verse lettering on the new job was not included in the contract, nor the removal of the monument from the old graveyard to the new, over Mr. Lochenour's (the father-in-law's) grave; there was no written contract.

George W. Buxton testified, in regard to the partnership between himself and Sims, and the contract with defendant, substantially as Sims did; also, that they had procured the marble for the work, and, upon examination, found that the party from whom they had ordered it had made a mistake in the thickness of the slab, making it one inch thicker than they ordered. Being uncertain whether defendant would be satisfied, they called on Jacob Pfeiffer, defendant's brother, to whom he had referred them in regard to the job, in regard to this difference, who promised to write to his brother (who lived in Louisville, Ky.) upon the subject, and a few days after reported to witness that he had so written, and that defendant had replied that he would make no objection on that account, that the thicker stone would be better, and that they should go ahead and do the work with that stone; before going on, they sold out to plaintiff, as stated by Sims. Witness has frequently seen the job since its completion, and regards it as better than the one over Mr. Lochenour's

Barkalow *v.* Pfeiffer.

grave; has been in the marble business fourteen years; the difference of an inch in height between the two stones results from plaintiff's job having a base one inch higher; there is quite a quantity of verse lettering on plaintiff's job, not included in the contract with defendant; all to be done under that contract was, to furnish marble slab and base, and make ornamental work and ordinary inscription, including name, date of birth and death, and assist in setting up.

Joseph Critchfield testified—"Have been a practical stone-cutter on marble tombstone work twelve or fourteen years; did this work; the material of both slab and base was of better quality than that over Mr. Lochenour's grave; the inscription and ornamental work is as nearly like that on the other as I could make it, except making the moulding around the oval some heavier, to prevent its cracking, which I discovered, before I made this, the other had done considerably; verse work on this job is two hundred and two letters, which is always extra unless specially contracted for, worth three and a half cents per letter. When I found that the slab was one inch thicker than that over Mr. Lochenour's grave, I made the base one inch thicker, to preserve the proper proportion and appearance; it would have looked very badly, and would not have been a workmanlike or properly constructed job, if it had not been made so; if the base had been of the same thickness as the other, with the slab an inch thicker, it would have been so out of proper proportion that I should not have regarded it as a good job, and I regarded the change of an inch in thickness of the base as being made necessary by change before stated in the thickness of the slab; this slab was six inches thick, and the other five; this base was nine inches thick, and the other was eight; I measured them both to-day; before making the ornamental work and inscription, I went and took an impression from Mr. Lochenour's tombstone, as correctly as possible, and made this job like it; I regard the prices charged in the bill as reasonable for the work and material,

and know that all the materials and labor charged for in the bill were furnished and done by plaintiff."

James C. Cavinaugh testified—"Have been in marble cutting some three years; know job done by plaintiff for defendant was well done, and as good in all respects, or better, than the other; material of slab and base better; think the workmanship better; the base would have been out of proportion and not a good job if of the same thickness or height as the other, and the slab an inch thicker; there is scarcely any perceptible difference between the two stones as they stand; one looks a very little higher than the other."

Morgan Quick testified—"Heard a conversation between plaintiff and defendant about the slab; went with parties and saw the stone laying down in plaintiff's workshop with face down; plaintiff called assistance and turned it partly over, and was proceeding to turn it further, when defendant told him to never mind, that was far enough, that it suited him, and to go ahead and put it up according to contract, and his money was ready; did not see base."

Defendant here admitted in open court, that he consented to the present thickness of the slab, and made, and now makes, no objection to the difference between the two slabs.

Simeon L. Perry testified—"Was with parties at time spoken of by Quick; heard defendant say, when job was turned up, as stated, 'Go ahead and put it up, and your money is ready;' plaintiff was about to turn it further over, but defendant told him it was unnecessary, as he could see it, and it suited him exactly; don't think the expression, 'put it up according to contract,' was used; think I should have heard it; did not; did not see base; Quick and I left before defendant."

Plaintiff testified—"Some time in February, 1868, bought out Sims and Buxton, and all their contracts for manufacturing and delivering of marble, and, among others, one they told me they had with defendant; the contract, they represented to me, was to build for defendant a marble slab monument, as near like the one over Mr. Lochenour's grave

as they could, with that in the graveyard, and their work in the shop, and assist in setting their job up; and for that they were to get one hundred and thirty-five dollars; they showed me the slab for the job, and stated it was thicker than the other, but that defendant made no objection to that; did not know defendant then, but knew his brother, to whom they referred me in regard to the job; went ahead and completed the job, and shortly after met defendant on the street, and told him I had finished job, and asked him to go and look at it; he did so, and Quick and Perry went with us; turned the job partly over, and was about to turn it further, as it was lying on its face on the trestles, when he said: 'Never mind; you need not turn it further; I can see it, and it suits me first rate; go ahead and put it up, and your money is ready.' Quick and Perry then left, and defendant remained, and I showed him base which was in front room; he made no objection, but expressed himself as highly pleased with the job; he and I then went to the graveyard, and he showed me what he wanted done there; the tombstone of Mr. Lochenour remained in the old graveyard, where he had been originally buried, but from which his remains had been removed to a lot in the new, joining the old, which defendant had purchased; he wanted that tombstone removed to the new grave; he showed me the kind of foundation he wanted, brick and mortar, and asked to have both foundations built, and he would pay me for it; he requested me to get them both put up soon, and repeatedly expressed himself satisfied with the job; I put the work up as he directed in regard to both stones; also cut a champer on each of the limestone bases he furnished, to go below the marble bases; I did all the work charged in my bill, and the charges are reasonable; he told me repeatedly that the work, both as to slab and base, was all right and entirely satisfactory; when we were examining the job in the shop, and defendant told me to go ahead and put the job up, he did not add the phrase, 'according to contract;' I am sure of this. Verse lettering was worth three to four cents per

letter; this kind of work is always extra, unless specially contracted for."

Daniel C. May testified—"Took plaintiff and defendant to graveyard; heard defendant tell plaintiff to have the foundations of the two stones built, and the two jobs set up, and he would pay plaintiff for it."

Henry Stader testified—"Helped build foundations, remove Mr. Lochenour's monument, and set up two monuments; work was well done."

B. F. Jones testified in regard to a draft which was in evidence, drawn by plaintiff on defendant for the amount; returned unpaid, but which became lost before the preparation of the bill of exceptions, and has not since been found, and hence is not included.

On behalf of defendant, the evidence was substantially as follows:

Jacob Pfeiffer testified—"Am brother of defendant; went with plaintiff and defendant at time spoken of by Messrs. Perry and Quick; the slab was shown, and was satisfactory to my brother; the base was not shown; no base was pointed out to my brother at all."

Defendant testified—"Made contract with *Sims & Buxton* to erect monument over grave of Mrs. Lochenour like the one over grave of Mr. Lochenour, and to move stone from his grave, in old graveyard near Columbus, to the grave in new yard, to which I had had his remains removed, in a lot which I had bought for that purpose; Mr. and Mrs. Lochenour were both buried there; for the removal of the stone aforesaid, and building monument, and building foundations for and setting both monuments up, I was to pay one hundred and thirty-five dollars when completed, and I was to furnish the two limestone bases to go immediately below the marble bases, as the two monuments were to be set up; they were to be just as nearly alike in all respects as they could be made; they wrote me sometime afterward, that in ordering or getting this stone a mistake had been made, and they had got the slab they were making for Mrs.

Lochenour's grave an inch thicker than the other, and asked me whether that would make any difference; I thought the thicker stone would be the best, and I sent word to them by my brother Jacob that it would make no difference, and I should not object on that account; I heard nothing more from them until some time afterward; when I was in Columbus, some stranger came to me, whom I learned was plaintiff, and told me he had a tombstone completed for my mother-in-law, under a contract which I had made with Sims & Buxton, and wanted me to come and see it; Perry and Quick went with us; I saw the slab, and was satisfied with it, and am yet; never saw the base; no base was shown to me; that is the only time I ever saw the job until after it was set up; after the monument over my father-in-law's grave had been removed and both had been set up, I saw them, and saw that the one plaintiff had made was about three inches higher than the other, and found, upon examination, that the difference resulted from a difference in the thickness of the base; the base under the old stone was six inches thick, and the base under the new eight; I was not satisfied with it; the difference between the height of the two stones was very perceptible to any one; I was not satisfied with and refused to accept it; it is in the same condition now; any one can see the difference between the two stones.

Defendant rested here.

Simeon L. Perry and Morgan Quick, upon being re-examined, both testified that Jacob Pfeiffer was not present during any part of the interview, when the slab was exhibited to defendant.

It is clear, from this record, that the court rejected wholly the claim for the marble slab and marble base charged in the account at one hundred and thirty-five dollars.

We are of the opinion that if the contract was within the statute of frauds prior to the putting up of the work at the grave, the erecting of the monuments or tombstones at the grave, in accordance with directions previously given by the defendant, the first examination of the work, and the

approval thereof by him at that time, and the repeated declarations of approval by him after the work was put up, should be regarded as sufficient evidence of delivery by the plaintiff, and an acceptance of the goods by defendant, to take the case out of the operation of the statute of frauds. 1 G. & H. 351, sec. 7.

If the work did not conform exactly to the terms of the contract, this, at most, under the circumstances of the case, would only entitle the defendant to a deduction from the price which had been agreed upon.    *McKinney* v. *Springer*, 3 Ind. 59; *Lomax* v. *Bailey*, 7 Blackf. 599; *Morton* v. *Kane*, 18 Ind. 191; *Pickens* v. *Bozell*, 11 Ind. 275; *Boyle* v. *Guysinger*, 12 Ind. 273.   We do not decide that under the circumstances the defendant was entitled to any abatement of the agreed price.   We have had no aid from the counsel for the appellee in the decision of the case, as they have filed no brief.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*R. Hill* and *G. W. Richardson*, for appellant.