WESTERN WHEELED SCRAPER COMPANY *v.* SCOTT
CONSTRUCTION COMPANY ET AL.

[No. 27,366. Filed June 10, 1940. Rehearing denied
September 16, 1940.]

410

*Davis, Pantzer, Baltzell & Sparks*, of Indianapolis, for appellant.

*Victor R. Jose, John G. Rauch, Miller, Miller & Bredell, W. H. Thompson, W. H. Wemmer, James R. Chase,* and *R. Niven Stall,* all of Indianapolis; and *Hays & Hays,* of Sullivan, for appellees.

FANSLER, J.—The Scott Construction Company contracted with the State Highway Commission to build a certain paved highway. George W. Gist contracted with the Scott-Construction Company to make certain cuts and fills and bring the base for such work to the grade required in the plans and specifications. The Scott Construction Company agreed, "in consideration of the full performance of the work," to pay George W. Gist at the rate of 45 cents per cubic yard for all material, except special borrow, moved in preparing the grade, the material to be measured according to the provisions of the contract between the Scott Construction Company and the State Highway Commission, and to pay for all special borrow at the rate of 35 cents per cubic yard. The contract between the Scott Construction Company and the State Highway Commission provided that where rock was moved it should be computed at three times the price of earth removed. Gist was to be paid monthly a sum equal to 90 per cent. of the estimate of the engineer of the State Highway Commission of the quantity of material moved according to the provisions of the principal contract. It was agreed that Gist would not remove any equipment supplied by him during the work until the contract was fully performed, and that in the event he failed to make progress in the prosecution of the work, so that delays resulted in other work upon the job, the Scott Construction Company should have the right to hire additional labor and equipment and take over his equipment and operate the same and complete the contract and charge the cost to Gist.

Gist began work under the contract and was paid 90 per cent. of the engineer's estimates as the work progressed, and it is claimed that he finished the grade according to the contract. The Scott Construction Company completed its pavement upon the grade, and finished its contract with the state. After the work was completed there was litigation between the Scott Construction Company and the State Highway Commission. This controversy concerned the amount of excavation that should be paid for as rock rather than earth. In this litigation the Scott Construction Company recovered a judgment, increasing the amount payable because of rock excavation by many thousands of dollars. Much of this excavating was done by Gist under his contract, and, by reason of the judgment, the amount due under Gist's contract was increased by approximately $30,000. While this litigation was progressing, Gist assigned his contract and his rights thereunder to the appellant, and the contract and the rights of the Scott Construction Company were assigned to various appellees.

The appellant brought this action against the appellees and the State Highway Commission to obtain a judgment against the principal contractor for the balance due under Gist's subcontract, and to enforce a lien upon the balance due the principal contractor. The State Highway Commission paid the money involved into court and interpleaded certain creditors of the principal contractor, who were claiming liens upon the proceeds of the judgment and who are appellees. In the complaint the facts are alleged concerning the contracts above referred to. It is alleged that Gist performed all of his obligations under the contract; that there remained due the sum of at least $22,500. There were answers, which we need not notice now, a trial

by the court, special findings of fact and conclusions of law, and judgment against the plaintiff (appellant).

On the 9th day of June, 1925, a claim under the Gist contract was filed with the State Highway Commission for the purpose of fixing a lien upon the money due the Scott Construction Company. This was more than sixty days after Gist had stopped work, but before work was completed by the Scott Construction Company. Chapter 173 of the Acts of 1911 (Acts 1911, p. 437) was amended by chapter 44 of the Acts of 1925 (Acts 1925, p. 129, § 53-201, Burns' 1933, § 14084, Baldwin's 1934), in such a manner as to require subcontractors to file claims within sixty days after their work is completed in order to acquire a lien. The act provides for the filing of the claim "within sixty days after the passage of this act or within sixty days from the last labor performed . . ." The act was passed by the House on February 6th and by the Senate on February 20th, was approved by the Governor on March 2nd, and went into effect as a law on April 25, 1925. It will be seen that the claim was filed within sixty days after the act went into effect, but it was not filed within sixty days after the act was passed by the two branches of the General Assembly and signed by the Governor. There is a contention that it was not filed in time, and that therefore there is no lien. The question is, was the claim filed within sixty days after the passage of the act? Statutes are not effective as law until published, circulated, and proclaimed by the Governor, except in cases where there is an emergency clause, and there is none in the act involved here. If the word "passage," as used in the act, were to be construed in the narrow sense, as meaning passage by the House and Senate, it would mean that the sixty days within which a claim might

be filed would start to run on February 20th, and would have expired before the act was published and became effective. In other words, the act would have the effect of destroying a pre-existing right to a lien before it became effective as a law. This cannot be, and it cannot reasonably be concluded that the Legislature had in mind any such anomalous situation. It must be concluded that the word "passage" was used in the broad sense, and that it was intended that claims might be filed within sixty days after the act became effective as a law. See *People ex rel. Blachly* v. *Coffin et al.* (1917), 279 Ill. 401, 117 N. E. 85. The claim was filed in time to entitle the claimant to a lien upon the fund.

The court's finding No. 6 is as follows: "That said George W. Gist undertook the excavation and grading of that portion of said highway covered by his said contract dated October 6, 1923; that before the making of the assignment hereinbefore referred to, and on or about the 2nd day of October, 1924, said George W. Gist, without cause abandoned the performance of said contract, withdrew from the job, thereafter refused to complete said contract and failed to perform said contract substantially. Said Scott Construction Company thereupon completed the work that Gist had agreed to perform. Said Scott Construction Company is in no way and to no extent indebted to said George W. Gist, William D. Foulke, or Western Wheeled Scraper Company, plaintiff herein, because of work done or materials furnished in the construction of Federal Aid Project No. 60." The sufficiency of the evidence to sustain this finding is questioned in a motion for a new trial. The solution of the question thus presented involves a construction of the basic substantial question in the case.

It is contended that the appellant sued upon the entire indivisible contract, alleging full performance; that the contract is by its terms entire and indivisible; and that a failure to complete the contract in its entirety according to its terms precludes any recovery under the contract. The trial court must have adopted this view, since, otherwise, the finding in question is not sustained.

The doctrine that a contract, which was to be completed as an entirety, and which is not actually severable into distinct and separable parts, must be completed in its entirety before there can be a recovery has been long recognized. Anciently, in England, it was given a very broad application in courts of law, but the rule was not enforced in equity. But in modern times this rule is generally held not to apply to contracts entire upon their face which have been partially performed and where benefits have accrued and have been accepted by the use or adoption of work done or material furnished in part performance of the contract. The acceptance and use of work, or material, or benefits, is treated as implying an agreement to sever and divide the contract. Varying facts may vary the basis of recovery for work or material furnished and accepted and used under a partially completed contract. If a person contracts to deliver 100,000 bricks for use in a building, at a fixed price per 1,000, and he furnishes only 75,000 of the bricks, and fails and refuses to deliver the remainder, he has breached his contract. But if the 75,000 bricks are taken and used in the construction of the building, he may collect for them at the contract rate per 1,000, unless it is shown that it was necessary to procure the remaining 25,000 bricks at an additional cost, or that the breach

occasioned other damage by delay or otherwise, in which event he would be entitled to recover the agreed price of the bricks delivered and taken and used, less the extra amount paid for additional bricks and any other damages accruing by reason of the breach.

In *Adams* v. *Cosby* (1875), 48 Ind. 153, 156, 157, the court said:

"The instructions given to the jury by the court, on its own motion, were as follows:

" '1. In this case, if you believe from the evidence that the contract for the building of the house named was entered into between Mr. Cosby, the plaintiff, and Mr. Adams, the defendant, and that the same was completed according to the contract, and the certificate of the architect mentioned was obtained, waived, or unreasonably refused, your verdict will be made up by allowing the price of the house, and the value of the extra work done at the defendant's request, if any was done, added together, deducting therefrom payments made by Adams, and offsets proved, added to the payments, and if the balance is in favor of the plaintiff, you will find in his favor for such balance, but if the balance is in favor of the defendant, you will find for him the amount of such balance.

" '2. But if you believe the plaintiff entered upon the erection of said house mentioned in the previous instruction, under the contract mentioned therein, and failed to complete it according to the contract, but the defendant nevertheless took possession of the house as left by the plaintiff, and occupied, and still occupies it, with his family, enjoying the benefits of the work done and materials furnished by the plaintiff, thus accepting them, then the plaintiff is entitled to recover the contract price of the house, less the cost of completing the house according to the contract, and any special damages

the defendant has proved himself to have sustained necessarily from the failure of the plaintiff to complete the house according to the contract, as the loss of rent, etc.; and in this state of facts, if it exists, you will deduct from the contract price of the house the cost of finishing it according to the contract and any special damages the plaintiff is shown to have sustained, as loss of rent, etc., on account of the failure to complete, and allow the plaintiff that sum, to which you will add the price as proved of the extra work, if any is proved to have been done, and from the aggregate of these two sums you will deduct payments made and set-offs proved by the defendant Adams, and if they leave a balance in favor of Cosby, the plaintiff, that will be your verdict in his favor, but if the balance is in favor of Adams, the defendant, that balance will be your verdict in his favor.'

"These instructions express the law which governs the case, and were properly given to the jury."

This rule was expressly approved in *Branham et al.* v. *Johnson* (1878), 62 Ind. 259.

The only decision of this court cited by the appellees as supporting their view is *Wolcott* v. *Yeager et al.* (1858), 11 Ind. 84, but in that case an instruction was approved which told the jury that it should be governed by the contract price agreed upon as far as they could follow the same, and it was held that it was undoubtedly correct to determine the value of the work done with reference to the contract price. In *Barkalow* v. *Pfeiffer* (1872), 38 Ind. 214, 222, it is said: "If the work did not conform exactly to the terms of the contract, this, at most, under the circumstances of the case, would only entitle the defendant to a deduction from the price which had been agreed

upon." It is true that in the early cases there seems to be some confusion as to the name or character of the action that could be maintained, whether an action upon the contract or an action upon a common count for labor and material. But it is clear from all of the cases that, where it can be done, the amount of recovery is to be measured by the contract price. In some cases, where the work never was finished, and there is no reasonable method of determining what it would cost to finish it as contemplated by the contract, this cannot be done, but where the work is ultimately finished and completed by the party who contracted to have it done there is a definite basis. The cost of completing it can be deducted from the contract price, and thus the amount due the plaintiff can be determined. Whether the action is called an action on the contract or a common count for work and labor and material would seem to be of no importance under our Code, which requires only a statement of the facts which will entitle the plaintiff to recover. Where the amount of recovery is to be measured by the contract this must involve pleading the contract. It was early held that under our Code the action is on the contract, and the defendant may set up by counterclaim his damages for failure of full or proper performance. *Pickens* v. *Bozell* (1858), 11 Ind. 275; *Morton* v. *Kane* (1862), 18 Ind. 191.

In the case at bar the plaintiff alleged and contended that the contract was completed in all things according to the specifications, and there was evidence that the work was accepted as completed by the Scott Construction Company. But there was evidence to the contrary to the effect that Gist left the work in the fall and moved his machinery without completing the excavating and grading, and that the Scott Construction Company was required to do additional excavating and filling in

order to complete the grade. It must be assumed that the trial court decided that the contract was not completed. But, even if this is true, it must be assumed that the Scott Construction Company received pay for every foot of excavation. Gist therefore was entitled to be compensated for every foot of excavation done by him, notwithstanding the Scott Construction Company may have done some additional excavating, unless the additional excavating done by the Scott Construction Company cost more per foot than Gist had agreed to do it for, or unless other damage resulted from the failure to complete the contract. There was evidence, undisputed, that at the time Gist left the work there was due him approximately $6,000, since he had been paid upon estimates only 90 per cent. of the amount due. After the litigation with the State Highway Commission, in which the allowance for rock excavation was increased, the Scott Construction Company credited Gist on its books with an item of almost $30,000 representing yardage, concerning which he had been settled with upon the theory that it was earth, but which in the litigation was determined to be rock and for which Gist was entitled to be paid three times the earth price.

Exhibit 41, which was a record of the entries in the books of the Scott Construction Company, with respect to its contract with Gist, was offered and admitted in evidence. This exhibit shows many credits and debits. The bookkeeper testified that he made the entries. Some were charges for work and labor, which he said were reported to him by various persons in charge of work for the Scott Construction Company. Among other things, there are charges of 28 per cent. of certain office rent and expenses, and officers' salaries, taxes, etc., incurred by the Scott Construction Company, and 28 per cent. of attorney fees

expended by the Scott Construction Company in its litigation with the state. There is one item of $7,500, which the bookkeeper testified was just an estimate of the amount the Scott Construction Company was damaged on account of Gist not completing his contract. As to another item of $2,000, he testified that it was engineering fees and was merely an estimate; that: "We had paid some of it out. I don't recall whether it had been all paid out or not." There was an item of $9,588.40, which the bookkeeper testified was interest, but he was unable to explain the basis for this charge. The appellees, in defense of its admission, say only that it was correctly admitted as showing that special work had been done by the Scott Construction Company upon the Gist job because of his abandonment of the work. Even if this were so it would not be sufficient to show that there was nothing due the plaintiff. There is no evidence that the items correctly indicated any specific work, or that they represented the cost of any work that was properly chargeable to Gist. It is also said that the exhibit was merely cumulative evidence, corroborating facts testified to by the witnesses, Cooper and Taylor. But neither of these witnesses gave any testimony as to the value or cost of any work done by the Scott Construction Company in the completion of the work which Gist agreed to do. Mr. Cooper testified that there had been landslides during the winter after Gist left, and that no one could say how much he had left unexcavated. Mr. Taylor said that when Gist left he told him that the excavation was not finished, and that whatever was required to be done to finish it they would have to do and charge to him. He seems to have had a proper conception of the rule of law involved. Nowhere in the evidence is there any basis for admitting evidence of, or justifying charges for,

interest, attorney fees, or the damages for delay which the bookkeeper said were estimated. Appellees finally say that, inasmuch as there could be no recovery on the Gist contract because of his breach thereof and failure to complete the work, exhibit 41 is irrelevant and harmless. This could only be true if the court's finding of facts No. 6 was based upon the theory that if Gist had failed to complete his contract he could recover nothing, and that he had failed to complete his contract. This, as we have shown, is an erroneous view of the law. It is clearly established that there was something due Gist when he left the work. It is not disputed that the amount was increased as a result of the litigation with the State Highway Commission. Waiving the question of pleading, the competent evidence does not show damages sufficient to offset the amounts earned under the contract. Finding No. 6 is not sustained by the evidence. It follows that the judgment must be reversed, with instructions to sustain the appellant's motion for a new trial.

The appellees Edmund C. Landgrebe and Winslow Coal Company were permitted to intervene and file claims against the fund paid into court by the State Highway Commission. They have assigned cross-errors seeking to reverse the judgment in so far as it affects them. We are confronted with a motion to dismiss these cross-errors. The rules of this court provide: "No assignment of cross-errors seeking a reversal of the judgment shall be made after the time allowed for taking an appeal." Appellant's motion for a new trial was overruled on March 31, 1938. Appellant filed the transcript in the Appellate Court on June 25, 1938. On July 21, 1938, the appellees filed their separate assignment of cross-errors. Since appellees did not file their assignment of cross-errors within

ninety days from the overruling of the motion for a new trial, they have failed to present any question. The motion to dismiss the cross-errors is sustained.

Judgment reversed, with instructions to sustain the appellant's motion for a new trial.

Tremain, J., dissents.

NOTE: Reported in 27 N. E. (2d) 879.