BLADE CORP., Blade & Associates, Inc., the Blade Company, Sidney D. Eskenazi and Lois Eskenazi, d/b/a Sand-West Development Company, a Partnership, Defendants-Appellants;

v.

AMERICAN DRYWALL, INC., Plaintiff-Appellee.

No. 1–479A111.

Court of Appeals of Indiana, First District.

March 4, 1980.

Rehearing Denied April 17, 1980.

Richard J. Dick, Marvin Mitchell, Eskenazi, Mitchell, Yosha & Hurst, Indianapolis, for defendants-appellants.

Michael S. Miller, Kennedy, Miller, Coons & Muller, William Freihofer, Dalrymple, Minton & Freihofer, Indianapolis, for plaintiff-appellee.

NEAL, Judge.

Defendants-appellants Sidney D. Eskenazi and Louis Eskenazi d/b/a Sand-West Development Company (Sand-West) appeal a judgment in favor of plaintiff-appellee American Drywall, Inc. (American) following a trial to the Hancock Circuit Court.[1]

Sand-West contracted with a builder for remodeling work on certain real estate owned by Sand-West. American contracted with the builder to perform drywall and painting work on the Sand-West property. Builder went out of business before completing the work under the contract with Sand-West, and on February 19, 1976, American notified Sand-West, pursuant to Ind. Code 32–8–3–9, that American was holding Sand-West responsible for American's unpaid claims against the builder. Under the terms of that statute, once properly notified, Sand-West would be liable for such claims "but not to exceed the amount which may be due, and may thereafter become due" from Sand-West to the builder.

Sand-West's appeal raises two issues for our review:

I. Whether the trial court erred in its finding and judgment that at the time American served its statutory notice of liability Sand-West was indebted to the builder in the amount of $12,600 and that American was entitled to recover that amount from Sand-West; and

II. Whether the trial court erred in finding that American did not intend to bind itself by endorsing checks containing purported releases and waivers of claims through the dates of the checks.

We reverse on the basis of Issue I and thus find it unnecessary to address Issue II.

In special findings of fact and conclusions of law, the trial court found that Sand-West owed the builder $12,600 on February 19, 1976, and that Sand-West was obligated to pay that entire amount to American. The court did not, however, enter findings of fact which show the basis for its calculation of the $12,600 figure.

Sand-West contends that it owed nothing to the builder on February 19, 1976, and

---

1. We can find nothing in the record relative to the defendant builder (Blade Corp., Blade & Associates, Inc., The Blade Company) and the builder was not a party to this appeal.

attempts to explain $12,310 of the $12,600 figure as the amount retained by Sand-West for work billed pursuant to progress billings under the following provisions from the contract between Sand-West and the builder:

"Owner shall pay directly to Contractor . . . monies for cost and expenses attributable to material, work and services performed by Contractor and his subcontractors and suppliers within ten (10) days after the required documentation is received and approved, the appropriate percentage amounts based on the percentage of the completion of the various items involved, less ten percent (10%) to be retained by Owner until final settlement is made.

\*　　\*　　\*　　\*　　\*　　\*

Any final balance of the contract price shall be paid by Owner when work specified and punch list is completed and all warranties are delivered to Owner."

Sand-West argues that, if the trial court's figure of $12,600 does include this retainage, the court erred in two respects: 1) the retainage was not owed to builder by Sand-West under the terms of the contract until the work was completed and warranties delivered; and 2) Sand-West had a right to the retainage superior to anyone making a claim against the funds and had, prior to receiving the notice from American under Ind. Code 32–8–3–9, expended the retainage plus additional funds in completion of the work left undone by builder.

American argues that the trial court's finding of a $12,600 indebtedness of Sand-West to the builder on February 19, 1976, is supported by the evidence in either of two ways: 1) that 83.75 percent of the project had been completed by the date of builder's breach, 75 percent of the contract price had been paid, leaving $12,928.38 owed to the builder on the date of breach; and 2) that American was entitled to the $12,310 retainage.

■　It is well-established that this court will not reweigh conflicting evidence on appeal. We will consider only that evidence which tends to support the trial court's findings of fact, conclusions of law, and judgment, together with all reasonable inferences which may be drawn therefrom. If, from that perspective, there is sufficient evidence to support the trial court's judgment, we must affirm. *Shahan v. Brinegar*, (1979) Ind.App., 390 N.E.2d 1036. We are cognizant that the trial court's findings are not to be set aside on appeal unless clearly erroneous, Ind.Rules of Procedure, Trial Rule 52(A), and that a trial court's judgment will be determined to be clearly erroneous only after a review of the evidence leaves us with a definite and firm conviction that the trial court erred. *University Casework Systems, Inc. v. Bahre*, (1977) Ind.App., 362 N.E.2d 155.

We first note the fallacies of American's first argument. First, the issue under Ind. Code 32–8–3–9 is what was owed to builder by Sand-West on the date of the giving of the statutory notice not on the date of builder's breach. Second, if 83.75 percent of the work were completed and 75 percent of the contract price paid, $12,926.64 would have remained unpaid, but $12,372.64 of this unpaid amount would represent the retainage under the contract and would be subject to Sand-West's arguments that this retainage was not owed under the contract on February 19, 1976, and was properly used by Sand-West to complete the project.

We now look to the evidence to see if the trial court's figure of $12,600 can be supported in any other way except as an approximation of the ten percent retainage under the contract.

■　Generally, one who claims a statutory right must bring himself within the provisions of the statute. *Board of Commissioners of Marion County v. Millikan*, (1934) 207 Ind. 142, 190 N.E. 185. Specifically, the burden of proof is upon an asserted mechanic's lienholder who seeks foreclosure to show that the purported lien meets all the statutory requirements necessary to its creation. *Stanray Corporation v. Horizon Construction, Inc.*, (1976) Ind.App., 342 N.E.2d 645. Ind. Code 32–8–3–9 is an integral part of Title 32, Article 8, Chapter 3

which creates remedies for contractors, subcontractors, mechanics, materialmen, etc. and is to be construed in harmony with the other sections of that chapter. *See Nash Engineering Company v. Marcy Realty Corporation, Inc.,* (1944) 222 Ind. 396, 54 N.E.2d 263. Thus, the burden of proof was on American to prove all the elements of its statutory claim against Sand-West, one such element being that Sand-West was indebted to the builder on February 19, 1976, or subsequent thereto.

American introduced into evidence the last progress billing submitted to Sand-West by the builder showing that as of December 3, 1975, builder had earned $123,108 of the total contract price of $147,733 (approximately 83.75 percent, as American argues), of which $110,798 was paid by Sand-West as of December 15 (approximately 75 percent, as American argues), and $12,310 was retained under the above-quoted contract provisions. American introduced testimony that some unspecified work continued at the site until the latter part of December or the middle of January 1976, but no one testified as to the dollar value or the details of any work completed between December 3, the last date covered by the last progress billing, and the day all work under the contract stopped. In fact, a vice-president and secretary of American expressly said he could not estimate how much work was done by American between November 25 and December 11 or after December 11. The record shows that the builder constructed and delivered to Sidney Eskenazi's private residence a poolside cabana for which he did not pay. The architect's drawing of the cabana bore the project number of the construction project at issue here, but there was no testimony as to the amount owed the builder for the cabana or as to its reasonable value.

In summary, the evidence leads conclusively to but one inference, that the court's finding of an indebtedness by Sand-West to the builder on the date of American's notice could only be based on the funds retained under the above-quoted contract provisions. We turn to whether this retainage was money owed the builder by Sand-West on February 19, 1976, and we find that it was not.

First, under the express terms of the above-quoted contract provisions, Sand-West was not required to pay the builder the balance of the contract price over and above the percentage amounts paid pursuant to periodic progress reports until the builder completed the project and delivered all warranties to Sand-West, neither of which ever occurred.

■ Second, under Indiana law, Sand-West had a right to hold the retained funds to secure itself against any damages that might have resulted from the builder's nonperformance. *Southern Surety Co. v. Merchants' & Farmers' Bank of Avilla,* (1931) 203 Ind. 173, 176 N.E. 846, 179 N.E. 327.

The purpose of such retained funds was well-explained in *Hanson v. Liberty Const. Co.,* (1931) 172 La. 298, 134 So. 98, 99 as follows:

"The object in retaining a certain percentage of the installments, paid on a work during the course of construction, is to create a temporary fund to insure all the better the payment of claims against the work, and to enable better the owner, or the surety, in the event of necessity, to complete the undertaking. To require the owner to pay anything out of that fund before the completion and acceptance of the improvement, or before the arrival of the time for the release of the fund, would defeat the very object that the contracting parties had in view in creating the fund . . . ."

■ In determining what was owed by Sand-West to the builder and thus to American under Ind. Code 32–8–3–9, American stands in the shoes of the builder, and American's rights are not superior to those of the builder. Sand-West had a right of set-off against the builder as to any monies owed Sand-West by the builder as a result of the builder's breach of their contract. *Pioneer Lumber and Supply Company v. First-Merchants National Bank of Michigan City,* (1976) Ind.App., 349 N.E.2d 219. Upon the builder's breach of the contract,

Sand-West had a cause of action for the breach, which measure of damages could be the reasonable cost of completion, *Johnson-Johnson, Inc. v. Farah*, (1952) 123 Ind.App. 87, 108 N.E.2d 638, or, alternatively, the actual cost to Sand-West of completion. *Western Wheeled Scraper Co. v. Scott Construction Company*, (1940) 217 Ind. 408, 27 N.E.2d 879; *Ogle v. Wright*, (1977) Ind.App. 360 N.E.2d 240.

Sidney Eskenazi testified that, in addition to the $110,798 paid to the builder for the work billed through December 3, 1975, Sand-West had advanced an additional $9,100 to the builder prior to the breach of the contract, and Sand-West spent an additional $50,370 in completing the project subsequent to the breach. He thus testified that Sand-West spent a total of $170,268 to complete the work that was to have been done for $147,733 under the contract with the builder.

Uncontradicted was his testimony that he advanced $9,100 to the builder, and that one particular subcontractor charged an additional $18,839.87 above what the progress reports had said the subcontractor would charge for the identical work under the original contract. A payment of $12,600 to another subcontractor was challenged as being for work outside the original contract, but even excluding that expenditure, the final outlay for the project sill totaled $157,668, well above the original contract price.

 It was incumbent upon American, as plaintiff, in order to lay claim to any of the retained funds, to introduce evidence that Sand-West either did not in actuality spend more than the original contract price to complete the project, or to introduce evidence that Sand-West's completion costs after the breach were unreasonable. American did neither. The only evidence before the court was the bills paid by Sand-West. The record thus shows that Sand-West used the retained monies, plus additional funds, to complete the project.

Our review of the evidence leaves us with the definite and firm convic-

tion that the trial court erred in finding that Sand-West was indebted to the builder on February 19, 1976; thus, that finding is clearly erroneous. *University Caseworks Systems, Inc., supra.* Sand-West owed the builder nothing on February 19, 1976, or subsequent thereto; therefore, Sand-West has no personal liability to American under the provisions of Ind. Code 32–8–3–9.

The judgment of the trial court is reversed.

Reversed.

ROBERTSON, P. J., and YOUNG, J. (participating by designation), concur.