**INDIANA BUREAU OF MOTOR VEHICLES c/o Joel L. Silverman, Commissioner, Appellants–Defendants,**

v.

**ASH, INC., Appellee–Plaintiff.**

**No. 74A01–0711–CV–518.**

Court of Appeals of Indiana.

Oct. 24, 2008.

Rehearing Denied Dec. 18, 2008.

---

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General Indianapolis, IN, Attorneys for Appellants.

J. Zach Winsett, Scales and Winsett, LLP, Boonville, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The Indiana Bureau of Motor Vehicles ("BMV") appeals the trial court's order granting Ash, Inc.'s ("Ash") motion for summary judgment. Ash cross-appeals, challenging the trial court's award of damages.

We affirm in part, reverse in part, and remand.

### ISSUES

BMV raises the following issues:

1. Whether the trial court erred when it granted Ash's motion for summary judgment.

2. Whether the trial court erred when it ordered BMV to pay interest on the judgment at the rate of eight percent (8%) per year.

On cross-appeal, Ash raises the following issue:

1. Whether the trial court erred when it ruled that Ash was not entitled to future damages.

### FACTS [1]

Ash is the owner of real estate located at 315 Main Street in Rockport, Indiana and 403 Main Street in Mount Vernon, Indiana. In July 2000, Ash leased both of these properties to BMV for a period of ten years. The lease for each property contains the following provisions:

21. **CANCELLATION**
    * * *

---

1. We heard oral argument in this case on September 29, 2008 in Indianapolis. We commend counsel for their able presentations.

B. The Parties agree that Tenant may terminate this Lease, during the Lease term, upon sixty(60) day's [sic] prior written notice to the Landlord. Termination shall occur without penalty to Tenant.

## 22. MODIFICATION OF LEASE

This Lease may be modified at any time upon written amendment signed by Landlord and Tenant.

(App. 18). BMV used each of the properties to house a license branch.

In early 2003, Ash's owner and president, George "Butch" Corne, discussed modifying the leases with BMV's Leasing Director Marsha White. In January 2003, White faxed to Corne her proposed modifications to the leases. The body of the fax reads as follows:

Landlord agrees as follows:

That as of July 1, 2003 he will

Provide seven to ten parking spaces at the rear of the Mount Vernon license branch and a [sic] ADA compliant ramped walkway to the side entrance.

Fulfill all current lease obligations at both Mount Vernon and Rockport including but not limited to:

permanent signage    Section 6B

Rodent and filth cleanup Section 8A17

Lighting    Exhibit B–1 Electric (65 foot candle)

HVAC    Exhibit B–1 HVAC

Tenant agrees that *after* all such work is completed the leases will be amended to exclude Section 21 CANCELLATION paragraph B.

(App. 46). In the bottom left hand corner of the faxed document was a Post–It Fax Note. The note indicated that the fax was sent to "Butch" from "Marsha." *Id.* In the bottom right hand corner of the document, Corne wrote, "I accept the above conditions." *Id.* Corne signed his name below that and faxed the document back to White on January 15, 2003.

On January 30, 2003, BMV sent Ash a document titled "License Branch Lease Amendment." This document reflected the terms proposed by BMV in the January 15, 2003 fax to Corne. Ash only received a lease amendment for the Mount Vernon property.[2] After reviewing the lease amendment, Corne noted that BMV had mistakenly stated that Mount Vernon is located in Spencer County when it is in fact in Posey County. Corne contacted BMV and asked that the error be corrected but it never was. Neither party ever signed the lease amendment.

Thereafter, Ash completed the renovations requested by BMV in the January 15, 2003 fax. Specifically, Ash "tore down a portion of the building at the Mt. Vernon site which was not part of the original lease agreement to provide ... parking spaces as set forth in the State's offer together with an ADA access ramp way to the side entrance." (App. 82). These renovations cost Ash approximately fifty-five thousand dollars.

On June 17, 2005, BMV notified Ash that pursuant to Section 21 of the leases (the "Cancellation Clause"), it was terminating the Mount Vernon and Rockport leases effective September 30, 2005. On January 24, 2006, Ash filed a complaint against BMV alleging that it breached the

---

**2.** A January 30, 2003 letter from BMV Property Manager Renee Richardson to Corne states that Richardson was sending Corne two license branch lease amendments. This would reasonably suggest that BMV also intended to send Corne a lease amendment for the Rockport location. Corne, however, only received a lease amendment for the Mount Vernon license branch.

lease agreements. Ash specifically contended that through the agreement memorialized in the January 15, 2003 fax, the parties amended the leases eliminating the Cancellation Clause, which consequently deprived BMV of its right to terminate the leases upon its giving sixty days notice.

Both parties filed motions for summary judgment. The trial court conducted a hearing on the parties' motions for summary judgment and a hearing on damages.[3] At the damages hearing, Corne was the only witness to testify. He stated that each month BMV was required to pay $3,062.50 in rent for the Mount Vernon property and $1,416.67 for the Rockport location. Corne stated that Ash's damages, in the form of unpaid rent, between October 2005 and May 2007 totaled $95,854.40. Corne testified that future damages from lost rent between June 2007 and when the leases were supposed to terminate in September 2010 would total $179,062.68.

Corne testified that the Mount Vernon property was listed for sale or for rent with a real estate company. The Rockport property, however, was not listed with a real estate company. Instead, Corne was attempting to sell or rent that property himself.

The trial court issued an order on October 25, 2007 granting Ash's motion for summary judgment and denying BMV's motion. The trial court's order states:

1. The writing attached as Exhibit A to the Affidavit of G.A. "Butch" Corne submitted by [Ash] in support of its Motion for Summary Judgment [referring to the January 15, 2003 fax], while not formally executed by both parties, undisputedly memorializes the agreement of the parties.

2. It is undisputed that [Ash] completely performed its obligation under the agreement.

3. [BMV] received the benefit of [Ash's] complete performance of the agreement and is estopped from asserting that the agreement is not binding.

4. [BMV] thereafter terminated the lease in breach of the agreement.

5. [Ash] has been damaged as a result of the breach.

6. [BMV] failed to raise as an affirmative defense at any time prior to trial that [Ash] failed to mitigate damages and has waived the defense of failure to mitigate.

7. [Ash] presented testimony as to the amount of rent due through May 31, 2007 which sum is the amount of $95,854.40.

8. [Ash] also presented testimony as to the total of [sic] amount of rental payments which would be due over the remaining duration of the leases, but did not present any evidence as to the present value of those future payments, nor did it present any evidence of an appropriate discount rate to apply to determine present value.

9. The Court cannot speculate as to the present value of the future payments to which [Ash] may be entitled.

Wherefore, the Court now enters summary judgment in favor of [Ash] and against [BMV] in amount of $95,854.40,

---

**3.** The trial court's hearing on the parties' motions for summary judgment was held on May 18, 2007. That same day, the trial court issued an order granting Ash's motion and denying BMV's motion. The hearing on damages was held on June 4, 2007. Subsequently, on June 12, 2007, the trial court sua sponte vacated its May 18, 2007 order on the parties' motions for summary judgment.

plus court costs, said judgment to bear interest at the rate of 8% per annum.

(App. 97–98). Thereafter, both parties filed a timely notice of appeal, and this appeal ensued.

## DECISION

### 1. *Summary Judgment*

BMV argues that the trial court erred in granting Ash's motion for summary judgment. Our standard of review for a summary judgment order is well settled. Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind.Ct. App.2007), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue of material fact for trial. *Id.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Id.*

"On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage." *Id.* We do not reweigh the evidence, and we will liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Id.*

During oral argument, BMV abandoned the arguments it made in its Appellant's Brief. Instead, it argued that the trial court erred in granting Ash's motion for summary judgment because White did not have authority to bind BMV to any contract. BMV did not plead this as an affirmative defense, raise this issue before the trial court, or discuss this in its Appellant's Brief. "If a party does not present an issue or argument to the trial court, appellate review of the issue or argument is waived." *Grathwohl v. Garrity*, 871 N.E.2d 297, 302 (Ind.Ct.App.2007). Therefore, this issue is waived. Even if the issue was not waived, BMV did not introduce any affidavits or other evidence that would suggest White did not have authority to bind BMV to the terms of a contract.

The trial court granted Ash summary judgment on its breach of lease claim. A lease is a type of contract. "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655 (Ind.Ct. App.2004).

The principal dispute here concerns whether the January 15, 2003 fax constitutes a contract. " 'An offer, acceptance, consideration, and a manifestation of mutual assent establish the existence of a contract.' " *Indiana Dep't of Correction v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind.Ct.App.2005) (quoting *Rodziewicz v. Waffco Heavy Duty Towing*, 763 N.E.2d 491, 493 (Ind.Ct.App.2002)), *trans. denied.* "To bring a contract into existence, an offer must be extended and the offeree must accept it, the communication of acceptance being crucial. Thus, a meeting of the minds between the contracting parties is essential to the formation of a contract." *Id.*

Here, the parties began discussing modifying the leases in late 2002 or early 2003. Sometime in January 2003, White faxed to Corne her proposed modifications to the leases. White requested that Ash provide seven to ten parking spaces and an ADA compliant ramped walkway at the Mount Vernon branch. Additionally, White stated that Ash was to provide permanent signage, rodent and filth cleanup, lighting, and HVAC at both the Rockport and Mount Vernon locations. Once Ash completed this work, White stated that BMV would agree to delete the Cancellation Clause from the leases.

White's fax to Corne constituted an offer on behalf of BMV to Ash. The fact that White, who was acting as BMV's representative, drafted the terms of the proposal indicates that BMV assented to those terms. The agreement proposed by White contains consideration that in exchange for certain repairs and modifications to be made by Ash to the branches, BMV would agree to delete the Cancellation Clause in both leases. Ash accepted BMV's offer on January 15, 2003 when Corne wrote at the bottom of White's fax, "I accept the above conditions," signed his name below that, and faxed the document back to White. (App. 46). Thus, the trial court properly concluded that the January 15, 2003 fax was a contract between Ash and BMV.

BMV breached the contract in June 2005 when it notified Ash that it was terminating the leases and later vacated the branches in September 2005. At that time, BMV no longer had the right to terminate the leases because the Cancellation Clause was deemed deleted in 2003 when Ash completed the repairs it was required to make to the branches under the contract. Ash sustained damages from the breach of the leases in the form of lost rent. Therefore, the trial court properly found that BMV breached the leases and

did not abuse its discretion in granting Ash's motion for summary judgment.

█ In its brief, BMV raised a number of arguments concerning whether it was bound by the terms of the January 15, 2003 fax. Although BMV abandoned these arguments during oral argument, we will briefly address these contentions. First, BMV asserts that the January 15, 2003 fax was not a binding contract because pursuant to Indiana Code section 4–13–2–14.2(a), all contracts with state agencies must be in writing. The January 15, 2003 fax, though, was in writing. Thus, the requirements of Indiana Code section 4–13–2–14.2(a) were satisfied.

█ Next, BMV argues that under the terms of the original 2000 lease agreements, the January 15, 2003 fax was not an effective modification of the leases. It notes that under Section 22 of the original leases, the leases could only be modified upon written amendment signed by BMV and Ash. BMV contends that it did not sign the January 15, 2003 fax.

█ Generally, the validity of a contract is not dependent upon the signature of the parties. *Int'l Creative Mgmt., Inc. v. D & R Entm't Co.*, 670 N.E.2d 1305, 1312 (Ind.Ct.App.1996), *trans. denied.* "However, some form of assent to the terms of the contract is necessary. Assent may be expressed by acts which manifest acceptance." *Id.* (citation omitted). Here, the contract was signed by BMV's representative White, who signed her name "Marsha" on the Post–It Fax Note at the bottom of the contract. (App. 46). We believe this signature was sufficient to satisfy the signature requirement imposed by Section 22 of the original leases as well. Furthermore, we note that White drafted the terms of the proposed contract, which indicates BMV assented to those terms.

BMV also contends that it is not bound by the January 15, 2003 fax because it does not comply with the Statute of Frauds, Indiana Code section 32–21–1–1. BMV asserts that because the terms of the agreement could not be performed within one year, the agreement had to be in writing and signed by the party against whom the action is brought, in this case BMV. BMV asserts that the agreement is not in writing and is not signed by BMV.

The January 15, 2003 fax provided that Ash must complete all work by July 1, 2003. Only after the work was completed would the Cancellation Clause be deleted. The terms of the agreement, then, could have been performed within one year. Thus, the Statute of Frauds does not apply to the January 15, 2003 fax. Additionally, even if the Statute of Frauds applied, the contract complies with the Statute of Frauds because, as we have already determined, the January 15, 2003 fax was in writing and was signed by White.

Even if the January 15, 2003 fax did not constitute a contract, the trial court could have properly granted Ash's motion for summary judgment under the doctrine of promissory estoppel. Promissory estoppel or "quasi-contractual remedies permit recovery where no contract in fact exists." *Bailey v. Manors Group*, 642 N.E.2d 249, 253 (Ind.Ct.App.1994), *trans. denied.* Quasi contracts do not arise from the parties' express agreement, but are implied by law in order to remedy wrongful enrichment of one party at the expense of another. *Id.* The elements of promissory estoppel are as follows: (1) a promise by the promissor; (2) made with the expectation that the promissee will rely thereon; (3) which induces reasonable reliance by the promissee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind.2001).

Here, the promise made by BMV to Ash was that if Ash completed certain modifications and repairs to the branches, it would agree to delete the Cancellation Clause in the leases. Relying upon this promise, Ash "tore down a portion of the building at the Mt. Vernon site which was not part of the original lease agreement to provide ... parking spaces as set forth in the State's offer together with an ADA access ramp way to the side entrance." (App. 82). These renovations cost Ash approximately fifty-five thousand dollars. BMV enjoyed the benefit of these renovations until 2005 when it vacated the Mount Vernon and Rockport properties. Thereafter, Ash suffered damages in the form of lost rent. Based on these facts, the trial court could have properly concluded that Ash was entitled to recover its damages under the doctrine of promissory estoppel.

Therefore, we conclude that the trial court properly granted Ash's motion for summary judgment.

## 2. *Interest on Judgment*

BMV argues that the trial court erred in ordering it to pay eight percent interest on the judgment. Indiana Code sections 34–13–1–6 and 34–54–8–5 provide that the State should only have to pay six percent interest on judgments entered against it. As such, BMV contends that it should only have to pay six percent interest on the judgment. Ash conceded at oral argument that BMV is correct on this point. Thus, the trial court erred in ordering BMV to pay eight percent interest on the judgment. On remand, the trial court shall amend its final order to reflect that the judgment will bear interest at the rate of six percent per annum.

### 3. *Future Damages*

On cross-appeal, Ash argues that the trial court erred when it concluded that it was not entitled to future damages. Our review of a damages award is limited. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC,* 870 N.E.2d 494, 507 (Ind.Ct.App. 2007). We review an award of damages under an abuse of discretion standard. *Noble Roman's, Inc. v. Ward,* 760 N.E.2d 1132, 1140 (Ind.Ct.App.2002). We will not reweigh the evidence or judge the credibility of witnesses, and we will reverse an award only when it is not within the scope of the evidence before the finder of fact. *Four Seasons,* 870 N.E.2d at 507.

A damage award must be supported by probative evidence and cannot be based on speculation, conjecture, or surmise. *Crider & Crider, Inc. v. Downen,* 873 N.E.2d 1115, 1118 (Ind.Ct.App. 2007). A party injured by a breach of contract is limited in its recovery to the loss actually suffered, and may not be placed in a better position than the party would have enjoyed had the breach not occurred. *Id.* "The burden of proof with respect to damages is with the plaintiff." *Noble Roman's,* 760 N.E.2d at 1140. "In actions for breach of contract, damages must be proven with reasonable certainty." *Id.*

At the damages hearing, Corne was the only witness to testify. He stated that between October 2005 and the date of the hearing, Ash's damages from lost rent payments totaled $95,854.40. Corne also asserted that Ash should be awarded future damages for lost rent from June 2007 to when the leases expire in September 2010, which he testified would total $179,062.68. The trial court ultimately awarded Ash damages totaling $95,854.40. With regard to Ash's request for future damages, the court noted that Ash "did not present evidence as to the present value of those future payments, nor did it present any evidence of an appropriate discount rate to apply to determine present value." (App. 98). The trial court noted that it could not "speculate as to the present value of the future payments to which [Ash] may be entitled," and denied Ash's request for future damages. *Id.* Ash contends that the trial court's refusal to award it future damages was an abuse of discretion.

"Present value has been defined as representing the present value of a sum of money that is to be paid over a period of years, with the discounted award being an amount which would be invested to yield the future sum." *Griffin v. Acker,* 659 N.E.2d 659, 662 (Ind.Ct.App.1995), *trans. denied.* While evidence of present value may assist the trier of fact in the determination of a reasonable award, it is not essential to an award of damages. *Id.*

That being said, the plaintiff bears the burden of proof with respect to damages and damages must be proven with reasonable certainty. *Noble Roman's,* 760 N.E.2d at 1140. Here, Ash introduced no evidence of the present value of the future rent payments for which it sought damages. Without evidence of present value, the trial court would have been forced to speculate as to the amount of future damages to which Ash was entitled. However, an award of damages cannot be based on speculation. *Crider & Crider,* 873 N.E.2d at 1118. While we recognize that evidence of present value is not essential to an award of damages, it is certainly within a trial court's discretion to determine that absent evidence of present value, including application of the appropriate discount rate thereto, an award of future damages would be too speculative. As such, we cannot say the trial court abused its discretion in denying Ash future damages.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and BARNES, J., concur.