

FILED

Mar 15 2018, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James M. Gary
Weber Rose, P.S.C.
Louisville, Kentucky

ATTORNEYS FOR APPELLEE

J. David Agnew
George W. Gesenhues, Jr.
Lorch Naville Ward LLC
New Albany, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gerdon Auto Sales, Inc. and William L. Gerdon, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> John Jones Chrysler Dodge Jeep Ram, a/k/a John Jones Automotive Group and John Jones Chrysler City, Inc., <br><br> *Appellees-Defendants.* | March 15, 2018 <br><br> Court of Appeals Case No. 31A01-1708-CT-1859 <br><br> Appeal from the Harrison Circuit Court <br><br> The Honorable John T. Evans, Judge <br><br> Trial Court Cause No. 31C01-1502-CT-7 |

**Najam, Judge.**

## Statement of the Case

[1]     Gerdon Auto Sales, Inc. and William L. Gerdon (collectively "Gerdon")

appeal the trial court's grant of summary judgment for John Jones Chrysler

Dodge Jeep Ram, a/k/a John Jones Automotive Group, and John Jones

Chrysler City, Inc. (collectively "Jones") on Gerdon's complaint, which alleged that Jones had breached its contract with Gerdon, that it had breached its duty of good faith and fair dealing, and that Gerdon had sustained damages from those breaches. Gerdon presents six issues for our review, which we restate as the following three issues:

1. Whether the trial court erred when it granted summary judgment for Jones on Gerdon's breach of contract claim.

2. Whether Gerdon's claim that Jones breached its duty of good faith and fair dealing was subject to a two-year or ten-year statute of limitations.

3. Whether William has standing to enforce the parties' contract.

[2] We affirm.

## Facts and Procedural History

[3] On September 16, 2011, Gerdon and Jones entered into an Asset Purchase Agreement (the "Contract"). Under the Contract, Gerdon agreed to sell and Jones agreed to purchase "real estate, new and used vehicles, fixed assets, special tools, equipment, fixtures, auto parts[,] and good will." Appellants' App. Vol. II at 21. Among other things, the Contract described the assets to be sold, the purchase price of those assets, contingencies, and an obligation that Jones employ William.

[4] The section of the Contract titled "Purchase and Sale" consisted of five subsections and described the assets to be sold and their purchase price. One subsection described the real estate and included a purchase price of $800,000. Another subsection described the fixed assets, good will, special tools, and equipment ("other assets") and provided for a purchase price of $200,000.

[5] The Contract contained a section on contingencies, which stated as follows:

> [Jones'] obligation to purchase is contingent upon the following conditions being met, or waived, by the Closing Date:
>
> 1. [Gerdon] being able to convey clear and marketable title to the Real Estate, as established by a title insurance commitment.
>
> 2. Obtaining authorization from Chrysler Corporation for the transfer of the subject dealership.
>
> 3. [Jones] being able to obtain conventional commercial financing for this transaction.
>
> 4. [Jones] being able to establish a floor plan arrangement with Ally Financial.

*Id*. at 22. The Contract also contained a provision that Jones "shall employ William L. Gerdon for twelve (12) months for a monthly salary of Three Thousand Dollars ($3,000.00)." *Id*. at 22-23. William signed the Contract on behalf of Gerdon in his official capacity as president of the corporation. He did not sign the contract in a personal capacity.

[6] Jones sought financing in the amount of $800,000 from First Savings Bank sometime shortly after the parties signed the Contract. On or around November 29, 2011, the bank determined that it wanted an environmental assessment to be done on the real estate. As such, the bank had not approved the loan application as of that date.

[7] The Contract provided for a closing date of December 1, 2011, unless the parties "mutually agreed, in writing" to a different date. *Id*. at 22. On December 19, the parties signed an agreement that extended the closing date to December 20 "due to circumstances involving Chrysler Corporation's approval of and necessary involvement with" the Contract. *Id*. at 113. Further, both parties believed that it was "in their best interests" to extend the closing date. *Id*. However, the environmental assessment had not yet been completed on the real estate and Jones had not yet obtained financing for the loan. Nonetheless, on December 19, without Jones having obtained financing for the real property, the parties closed on the sale and purchase of the other assets.[1]

[8] The environmental assessment report was completed in January 2012. On April 3, the bank issued a letter in which it denied Jones' loan application due to environmental issues and the appraised value of the real estate. Jones did not

---

[1] In the record on appeal, the parties did not provide any closing documents from the closing on the other assets. Neither did the parties provide any other evidence about the events that occurred on December 19. As such, it is unclear from the record whether the parties first agreed to extend the closing date from December 19 to December 20 and then, sometime thereafter, closed on the other assets on December 19, or, whether on December 19 the parties simultaneously closed on the other assets and agreed to extend the closing date on the remaining assets.

attempt to provide the bank with collateral other than the real estate, nor did it attempt to obtain a loan from a different financial institution. The parties did not close on the real estate.

[9] On February 13, 2015, Gerdon filed a complaint against Jones in which it alleged that Jones had breached the terms of the Contract when it failed to pay $800,000 to purchase the real estate and that, as a result of that breach, William, individually, was required to spend in excess of $50,000 per month for ongoing costs associated with Gerdon's operation. Gerdon further alleged in its complaint that Jones had breached its duty of good faith and fair dealing. In its answers, in what amounted to an affirmative defense, Jones asserted that it did not breach the Contract because the Contract contained a financing contingency and Jones did not obtain financing. It also raised the affirmative defense that Gerdon's claim for breach of the duty of good faith and fair dealing was barred by an applicable statute of limitations.

[10] On January 24, 2017, Jones filed a motion for summary judgment in which it reiterated the assertions it had made in its answers that it did not breach the Contract because the bank had denied its loan application and that Gerdon's claim that Jones had breached its duty of good faith and fair dealing was barred by a two-year statute of limitations. Jones further asserted that William was not a party to the Contract and that the complaint did not contain any allegations that would confer standing on him to enforce the Contract.

In response, Gerdon asserted that there were genuine issues of material fact regarding whether Jones had breached the Contract when it failed to purchase the real estate and whether it had waived the financing contingency. Gerdon also contended that the limitations period for its claim for breach of good faith and fair dealing was ten years. In addition, Gerdon asserted that William was a third-party beneficiary of the Contract. In support of its opposition to Jones' motion for summary judgment, Gerdon designated William's affidavit in which he stated:

> At all times during the negotiations associated with this transaction, it was clearly understood and agreed that the transaction would involve the sale of the automobile franchises . . . and the real estate which was the location of the dealership; there was never any discussion or mention that the transaction would consist of multiple, or separate transactions or agreements for portions or parts of these assets[.]

Appellants' App. Vol. II at 103. After two hearings, the trial court entered summary judgment for Jones. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

Gerdon contends that the trial court erred when it entered summary judgment for Jones. Our standard of review is clear. The Indiana Supreme Court has explained that

> [w]e review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in

favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id*. (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id*. at 761–62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys*., 916 N.E.2d 906, 909–10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (omission and some alterations original to *Hughley*).

[13] Here, the trial court entered findings of fact and conclusions thereon in its summary judgment order. While such findings and conclusions are not required in a summary judgment and do not alter our standard of review, they are helpful on appeal for us to understand the reasoning of the trial court. *See Knighten v. E. Chicago Hous. Auth*., 45 N.E.3d 788, 791 (Ind. 2015). On appeal,

the parties dispute whether Jones breached the Contract and whether it breached its duty of good faith and fair dealing. The parties also dispute whether William had standing to enforce the Contract. We address each argument in turn.

### Issue One: Breach of Contract

Gerdon first contends that Jones breached the Contract. To prevail on that claim, Gerdon must prove the existence of a contract, that Jones breached the contract, and damages. *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015), *trans. denied*. The parties only dispute whether Jones breached the Contract. Gerdon contends that Jones breached the Contract when Jones failed to purchase the real estate despite not having obtained financing for the real estate because, according to Gerdon, Jones waived the financing contingency when it purchased the other assets. Jones responds that the Contract was severed when it was partially performed and that the financing contingency was unaffected by the partial sale and purchase. In other words, whether Jones waived the financing contingency and, thus, breached the Contract turns on whether the Contract was severable.

*Severability*

Plain Language

We first address whether the Contract, as drafted, was severable. Gerdon contends that the Contract was not severable and that Jones breached the Contract when Jones paid $200,000 for the other assets but failed to pay $800,000 for the real estate. This court has previously outlined the factors for a court to consider in order to determine whether a contract provision is severable.

> [W]hether a contract is entire or divisible is controlled by the intention of the parties as it is disclosed by the terms of the contract. It is well established that the parties to a contract intend that it be entire and indivisible when by its terms, nature and purposes it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent, or whether it could be completed in part only.

*Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 891 (Ind. Ct. App. 2002) (quoting *Samper v. Ind. Dept. of State Revenue*, 106 N.E.2d 797, 802 (Ind. 1952)).

Gerdon contends that Jones breached the Contract when it purchased the other assets without also purchasing the real estate because "the transaction in question was unequivocally a single transaction[.]" Appellants' Br. at 12. Jones counters that the Contract was severable because "the contract contained two provisions—severable by terms of the contract itself: a sale of the Real

Estate for $800,000 and the sale of [the other assets] for $200,000."[2] Appellees' Br. at 17.

[17] On this question, we must agree with Gerdon. The Contract consistently refers to all of the "assets" as a whole, which included the real property, the personal property, and the intangible good will. For instance, the Contract states that Gerdon desired to sell and Jones "desire[d] to buy the Assets on the terms contained in this Agreement[.]" Appellants' App. Vol. II at 21. Further, it states that Jones shall purchase from Gerdon "the assets associated with the operation" of the dealership. *Id.* Additionally, the Contract requires one down payment of $50,000 that "shall be applied to *the* Purchase Price at *the* closing[.]" *Id.* at 22. (emphasis added). The Contract also references one transaction. For example, under the payment clause, the Contract provides direction on how the parties would handle the down payment if "*this* transaction" does not close because a contingency was not met. *Id.* (emphasis added). Finally, the Contract as originally drafted provides for a single closing date, which was "*a* date mutually agreeable to the parties, but in no event shall *the* Closing Date be later than December 1, 2011, unless mutually agreed, in writing." *Id.* (emphasis added). Based on the contract language that refers to the assets as a whole, to one down payment that shall be applied to the purchase price, to one

---

[2] The Contract does contain a severability provision that states as follows: "This agreement is severable and any provision herein held to be violative of any applicable statutes, regulations, or law, shall only affect the portion in conflict." Appellants' App. Vol. II at 23. However, that clause appears to apply only if a court declares that a particular Contract provision violates the law, and Jones does not suggest otherwise on appeal, and it does not rely on the severability provision in its argument to this Court.

transaction, and to one closing date, we conclude that the Contract, as originally drafted, was not ambiguous with regard to its nonseverability and that the parties did not intend for the original Contract to be severable. But our inquiry does not end here.

## Modification and Severance[3]

[18] Although the Contract was nonseverable as originally drafted, we next address whether the parties modified the Contract by their conduct.[4] While Jones does not allege that it explicitly agreed to modify the Contract, it is well settled that "[e]ven a contract providing that any modification thereof must be in writing may nevertheless be modified orally." *City of Indianapolis v. Twin Lakes Enters., Inc.*, 568 N.E.2d 1073, 1084-85 (Ind. Ct. App. 1991). Further, the "modification of a contract can be implied from the conduct of the parties." *Gilliana v. Paniaguas*, 708 N.E.2d 895, 897 (Ind. Ct. App. 1999), *trans. denied*. As a general rule, "[q]uestions regarding the modification of a contract are ones of fact[.]" *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 221 (Ind. Ct. App. 1987). But, here, as the trial court found, there are no issues of material fact.

---

[3] Neither party squarely addresses the question of whether the Contract was modified, but that is the heart of the dispute. We will affirm a trial court's entry of summary judgment if it can be sustained on any theory or basis in the record. *DiMaggio v. Rosario*, 52 N.E.3d 896, 904 (Ind. Ct. App. 2016).

[4] The Contract contains a provision that states: "This Agreement and all related agreements executed on this date represent the entire understanding of the parties and may not be modified except upon written agreement executed by [Gerdon] and [Jones]." Appellants' App. Vol. II at 23.

[19]     Since there was no written or other explicit agreement to modify the Contract, we must rely on the designated evidence to determine whether, as a matter of law, the conduct of the parties supports more than one inference of their intent. The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it. *See Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005). In order to determine a party's intent, a court does not examine the hidden intentions secreted in the heart of a person but should examine the final expression of that intent found in conduct. *See id*.

[20]     Again, typically, where there is no written or otherwise explicit agreement, whether the parties have agreed to modify and sever a contract would present a question of fact for the trial court. *See Heritage Dev. of Ind., Inc.*, 773 N.E.2d at 892-93. But, here, it is undisputed that the parties agreed to and did, in fact, close on a partial sale and purchase of the assets. As such, they demonstrated that the Contract was capable of separate and independent performance with regard to the other assets. *See id.* at 893. And with contracts entire upon their face which have been partially performed, the acceptance and use of work, or material, or benefits, is treated as implying an agreement to sever and divide the contract. *See W. Wheeled Scraper Co. v. Scott Constr. Co.*, 27 N.E.2d 879, 881 (Ind. 1940). Thus, in this case, where the parties have partially performed the Contract and exchanged valuable consideration, the question of modification can be resolved as a matter of law based on the conduct of the parties. *See Heritage Dev. of Ind., Inc.*, 773 N.E.2d at 892-93.

While the Contract provided for a single transaction, Gerdon accepted payment in exchange for the other assets. The parties closed on some but not all of the assets, and for some but not all of the sale price, without any other indication or expression of their intent. As such, the parties' actions manifest an agreement to modify and sever the Contract. On this record, without designated evidence of a contrary intent, we hold that a partial closing on the other assets constituted partial performance of the Contract and that the parties modified and severed the Contract by their conduct. *See id.* Thus, we turn to whether Jones waived the financing contingency.

*Waiver*

Gerdon contends that "[n]o party to this lawsuit has ever suggested that the transaction in question . . . was constructed or designed as a series of separate agreements, each to be completely independent of the others." Appellants' App. Vol. II at 90. Gerdon continues that, "the contract in question is a single, indivisible contract which is not susceptible to partial performance." *Id*. And he concludes that, "[b]y making partial payment under the contract in question, [Gerdon] insist[s] that the Defendants have specifically waived the contingencies therein." *Id*.

In support of those contentions, Gerdon designated William's affidavit in which he stated that "[a]t all times during the negotiations associated with this transaction . . . there was never any discussion or mention that the transaction would consist of multiple, or separate transactions or agreements for portions or parts of these assets." *Id*. at 103. This statement is merely an averment that the

parties did not discuss severance of the Contract, which is not a matter in dispute. Even when viewed in the light most favorable to Gerdon, the nonmovant, this contention does not create an issue of material fact.

[24] The designated evidence does not show that at any time "during the negotiations associated with this transaction," there was any "discussion or mention" that Gerdon asked or required Jones to waive the financing contingency in order to close on the sale and purchase of the other assets. Neither does the evidence show that that Jones offered or agreed to waive the financing contingency. "Waiver is the intentional relinquishment of a known right." *Salem Cmty. Sch. Corp. v. Richman*, 406 N.E.2d 269, 274 (Ind. Ct. App. 1980). Waiver is ordinarily a question of fact, and the burden of proving waiver is on the party claiming it. *Id*.

[25] However, while the existence of facts necessary to constitute a waiver of a contract provision is ordinarily a question of fact, the question of the facts necessary to constitute a waiver is a matter of law. *Jackson v. DeFabis*, 553 N.E.2d 1212, 1217 (Ind. Ct. App. 1990). "When only the legal conclusions to be drawn from those facts are argued, the question of waiver is proper for the court to consider as a matter of law on summary judgment." *Pohle v. Cheatham*, 724 N.E.2d 655, 658 (Ind. Ct. App. 2000). And the parties only dispute whether more than one reasonable inference and legal conclusion can be drawn from those facts. Thus, in this case, the question of waiver is a proper consideration for summary judgment and can be determined as a matter of law. *Id*.

There is nothing in the record to indicate that Jones agreed to waive the financing contingency. As such, we are left to consider the only objective facts available, the conduct of the parties. And, as discussed above, the facts establish that the parties modified the Contract. It is well-settled that when a contract is modified, the original contract still exists and binds the parties as far as it can be followed, and the modifications do not affect the original contract, which still remains in force. *Foltz v. Evans*, 49 N.E.2d 358, 365 (Ind. Ct. App. 1943). *See Justus v. Justus*, 581 N.E.2d 1265, 1276 (Ind. Ct. App. 1991). Thus, on summary judgment, where there is no designation of material facts indicating a contrary intent, when a contractual provision is severed, the unsevered provisions are not waived but survive intact.

The initial burden was on Jones, as the summary judgment movant, to demonstrate the absence of any genuine issue of material fact with respect to whether the unsevered provisions of the Contract survived the partial closing. Jones designated evidence showing that a partial sale and purchase of the other assets occurred and, therefore, that the Contract was severed and the financing contingency for the real estate remained intact. At that point, the burden shifted to Gerdon to designate evidence indicating a contrary intent, namely, evidence that, while the Contract was severed, the financing contingency did not remain intact and was waived. But Gerdon did not designate any such evidence. The designated evidence shows that Gerdon agreed to sell, and Jones agreed to purchase, the other assets for a sum of $200,000. The only reasonable inference that can be drawn—not from the

subjective intent of the parties but from the designated evidence—is that the Contract was partially performed and severed when Gerdon and Jones conducted a $200,000 partial closing. Thus, we conclude that by operation of law the balance of the Contract remained intact, the $800,000 financing contingency survived the partial closing and was not waived, and Jones had no obligation to purchase the real estate because the bank had not approved its loan request.

[28] In sum, the uncontroverted material facts demonstrate that Gerdon and Jones conducted a partial sale and purchase of the other assets and that, by their conduct, they modified and severed the Contract. As such, the $800,000 financing contingency on the real estate remained intact, and Jones has affirmatively negated Gerdon's breach of contract claim. *See Hughley*, 15 N.E.2d at 1003. Accordingly, we hold that the trial court did not err when it entered summary judgment for Jones on that claim.

### *Issue Two: Breach of Duty of Good Faith and Fair Dealing*

[29] Gerdon also asserts that Jones breached its duty of good faith and fair dealing when it failed to seek a loan from another financial institution or when it failed to offer collateral other than the real estate for the loan. Here, the parties dispute only whether Gerdon's claim on the issue of the breach of the duty of good faith and fair dealing in its initial complaint was barred by an applicable statute of limitations. Gerdon asserts that the duty at issue here arises from the Contract and, as such, the statute of limitations was ten years. Jones, on the

other hand, asserts that the alleged breach of duty of good faith and fair dealing is a tort claim and that the statute of limitations was two years.

[30] We agree with Gerdon that, in substance, its complaint alleges a contractual duty of good faith and fair dealing. However, the Contract does not contain a provision regarding such a duty, and we hold that there was no implied duty of good faith and fair dealing in the Contract. "Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally limited to employment contracts and insurance contracts." *Old Nat'l Bank*, 31 N.E.3d at 531. Further, courts will only impose a duty of good faith and fair dealing if the contract is ambiguous or expressly imposes such a duty on the parties. *Id.* The contract at issue here is neither an employment contract nor an insurance contract. And, again, the Contract does not expressly impose a duty of good faith and fair dealing on the parties.

[31] Therefore, we must determine whether the Contract is ambiguous. The "[i]nterpretation and construction of contract provisions are questions of law." *B&R Oil Co. v. Stoler*, 77 N.E.3d 823, 827 (Ind. Ct. App. 2017), *trans. denied.* Gerdon asserts that the summary judgment burden was on Jones "to establish that the contract in question is without ambiguity." Appellant's Br. at 15. It also asserts that "the language of the contract itself included ambiguities with regard to the contingency elements." Appellant's Reply Br. at 8.

However, Jones designated the Contract as evidence in support of its motion for summary judgment, and the Contract speaks for itself. The burden then shifted to Gerdon to show an issue for the trier of fact. *See Hughley*, 15 N.E.3d at 1003. On appeal, Gerdon does not identify any language in the Contract that it claims to be ambiguous. As such, we hold that the provision of the Contract regarding the contingencies is not ambiguous. Because the Contract does not contain any ambiguities, we will not impose a duty of good faith and fair dealing on the parties. *See Old Nat'l Bank*, 31 N.E.3d at 531. Thus, the claim that Jones breached the duty of good faith and fair dealing was not available to Gerdon, and we need not address the statute of limitations issue. The trial court did not err when it granted summary judgment for Jones on that claim.[5]

## Issue Three: Standing

Finally, Gerdon contends that the trial court erred when it determined that William lacked standing to enforce the Contract because he was not a third-party beneficiary of the Contract. Gerdon asserts that William "was a proper party to the present action as a named and identified third-party beneficiary [of] the agreement." Appellants' Br. at 15. However, because we hold that the trial court did not err when it entered summary judgment for Jones on both of

---

[5] The trial court entered summary judgment for Jones on Gerdon's claim that Jones breached its duty of good faith and fair dealing because that claim was barred by a two-year statute of limitations. Even though we do not reach the question of which statute of limitations applies, we will affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record. *DiMaggio,* 52 N.E.3d at 904.

Gerdon's claims, we need not address whether William had standing to enforce the Contract.

## Conclusion

[34]   We hold that the trial court did not err when it entered summary judgment on Gerdon's breach of Contract claim because the parties modified and severed the Contract and because Gerdon did not designate evidence to demonstrate that the balance of the Contract, including the financing contingency, did not remain intact or that Jones waived that contingency. We also hold that the trial court did not err when it granted summary judgment for Jones on Gerdon's claim for breach of good faith and fair dealing because the Contract did not contain an implied duty of good faith and fair dealing and, thus, that claim was not available to Gerdon. Finally, because we hold that the trial court did not err when it entered summary judgment for Jones on Gerdon's claims, we need not address whether William had standing to file the complaint.

[35]   Affirmed.

Mathias, J., and Barnes, J., concur.