

I N T H E

# Court of Appeals of Indiana

Derr Enterprises, LLC,

*Appellant-Defendant,*

v.

Union City Indiana Properties, LLC,

*Appellee-Plaintiff.*



**FILED**

Feb 18 2025, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

February 18, 2025

Court of Appeals Case No.
24A-CC-219

Appeal from the
Hamilton Superior Court

The Honorable
Jonathan M. Brown, Judge

Trial Court Cause No.
29D02-2002-CC-1726

**Opinion by Senior Judge Shepard**
Judges Bailey and Kenworthy concur.

**Shepard, Senior Judge.**

[1] Derr Enterprises, LLC appeals, challenging the trial court's judgment in favor of Union City Indiana Properties, LLC with regard to the parties' lease dispute. Concluding the judgment is not clearly erroneous but the court erred in awarding damages, we affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

[2] Union City and Derr entered into a commercial real estate lease for a two-year term commencing July 2, 2018. In a June 2019 phone call, Rodi Rozin, the owner of Derr, informed Josh Orahood, the owner of Union City, that Derr was experiencing financial difficulties and that it intended to terminate the lease early. Orahood asked Rozin to send him an email memorializing their conversation. The next day, Rozin sent Orahood the following email:

> Hi Josh,
>
> As we discussed yesterday over the phone, we have to close our operation in Summitville due to continued weakness in our business. We plan to wind everything down by December 31, 2019. I hope you will work with us to terminate our lease 6 months early.

Please let me know if you need anything else from my side. Jamie and the rest of the team have been informed, so if you need access to the building feel free to coordinate through Jamie.

Thanks for your understanding and cooperation.

Best,
Rodi

Ex. Vol. 3, p. 16 (Defendant's Ex. A). The same day Orahood responded:

Rodi

Recieved[sic]. Are you shutting down the whole business or just the Summitville location?

What are you going to do with the equipment at Summitville? We may be interested in some of it like the forklifts, shop tools etc if you plan to sell them.

Regarding Jamie- if she's looking for a job, we might be able to employ her in our business and actually utilize that building for another segment we have, not sure but possibly. Please send her my contact info when convenient and I will see what I can do. She seemed pretty sharp.

Thanks for the heads up. Sorry to hear that things took a bad turn and wish you all better fortunes in the future.

Josh Orahood

*Id.* at 15 (Defendant's Ex. A). Derr ceased paying rent after the November 2019 payment and vacated the property by December 31.

[3]     In February 2020, Union City filed a complaint against Derr for breach of the lease agreement and later moved for summary judgment. The trial court

granted Union City's motion and awarded it $82,945.90 in damages. Derr moved to correct error, asserting there were genuine issues of material fact regarding whether the lease agreement was orally modified. The court denied the motion, and Derr appealed. A panel of this Court determined that a genuine issue of material fact existed regarding whether the parties agreed to modify the lease to shorten its term and reversed and remanded the case for further proceedings. *See Derr Enters., LLC v. Union City Ind. Props., LLC*, No. 21A-CC-2305 (Ind. Ct. App. Sept. 14, 2022) (mem.).

[4] On remand, the trial court held a bench trial and entered judgment for Union City. The court awarded Union City $119,046.60 for unpaid rent, late fees, unpaid insurance premiums, unpaid utility bills, winterizing costs, and attorney fees. Derr moved to correct error, and the court denied the motion. This appeal ensued.

## Issues

[5] On appeal, Derr presents the following issues:

I. Whether the trial court erred by denying Derr's motion to correct error and concluding the evidence did not establish that the parties agreed to modify the lease or that there was any consideration to support a modification of the lease;

II. Whether the court erred by denying Derr's motion to correct error and concluding Union City was entitled to certain late fees, insurance premiums, and utility payments; and

III. Whether the court erred by denying Derr's motion to correct error and concluding Union City was entitled to $20,000 in attorney fees.

## Discussion and Decision

[6] Derr appeals from the denial of a motion to correct error. We review the denial of a motion to correct error for an abuse of discretion. *Kobold v. Kobold*, 121 N.E.3d 564, 570 (Ind. Ct. App. 2019), *trans. denied*. An abuse of discretion occurs when the decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.*

[7] Prior to trial, Derr requested the court to issue special findings of fact and conclusions thereon pursuant to Trial Rul 52(A). We apply a two-tiered standard of review to such findings and conclusions: (1) whether the evidence supports the findings and (2) whether the findings support the judgment. *Alifimoff v. Stuart*, 192 N.E.3d 987, 998 (Ind. Ct. App. 2022), *trans. denied*. We will set aside a court's findings and conclusions only if they are clearly erroneous. *Id.*; T.R. 52(A). A judgment is clearly erroneous when the record contains no facts or inferences to support it, and a review of the record leaves us firmly convinced a mistake has been made. *Id.* In this evaluation, we do not reweigh the evidence or reassess the credibility of witnesses but view the evidence most favorably to the judgment. *Hazelett v. Hazelett*, 119 N.E.3d 153, 157 (Ind. Ct. App. 2019).

# I. Modification of Lease

[8] Derr argues that Rozin and Orahood agreed to modify the duration of the lease during their June 2019 phone conversation, that the agreement is memorialized in Rozin's email to Orahood, and that Orahood's assent to the modification is exhibited in his reply email. Derr therefore challenges the court's Conclusion 9:

> There is no specific language in the emails which demonstrates anything more than [Union City] was acknowledging DERR was terminating the lease early. In fact, Orahood simply confirmed receipt and offered to purchase some of DERR's equipment and/or try to find a job for DERR's employee. Such comments do not amount to a modification of lease terms. *See* <u>Kelly v. Levandoski</u>, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005) (where the court held if a party cannot demonstrate agreement on one essential term of the oral contract, then there is no mutual assent, and no contract is formed)[.]

Appellant's App. Vol. 2, p. 19 (Findings of Fact and Conclusions Thereon).

[9] Although the lease here is silent as to modification, we observe that generally even a contract requiring any modification to be in writing may nevertheless be modified orally. *Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep Ram*, 98 N.E.3d 73, 80 (Ind. Ct. App. 2018) (quoting *City of Indianapolis v. Twin Lakes Enters., Inc.*, 568 N.E.2d 1073, 1084-85 (Ind. Ct. App. 1991)), *trans denied*. In any event, because the modification of a contract is itself a contract, it requires all of the mandatory elements of a contract. *Morgan v. Dickelman Ins. Agency, Inc.*, 202 N.E.3d 454, 459 (Ind. Ct. App. 2022) (quoting *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 443 (Ind. 2015)), *trans. denied*. These elements are

offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Morgan*, 202 N.E.3d at 459 (quoting *Barrand v. Martin*, 120 N.E.3d 565, 572 (Ind. Ct. App. 2019), *trans. denied*). Of particular importance in the creation of a contract is that an offer must be extended, and the offeree must accept it; the communication of acceptance is "'crucial.'" *Tchrs. Credit Union v. Cripe*, No. 24A-PL-698, 2024 WL 5100745, at *6 (Ind. Ct. App. Dec. 13, 2024) (quoting *Troutwine Ests. Dev. Co. v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 897 (Ind. Ct. App. 2006), *trans. denied*), *trans. pending*. Generally, questions regarding modification of a contract are questions of fact. *Gerdon Auto Sales*, 98 N.E.3d at 80 (quoting *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 221 (Ind. Ct. App. 1987)).

[10] To meet its burden of showing the parties agreed to modify the lease and thus created a new contract, Derr insists that, during the phone call, not only did Rozin make a request/extend an offer but also Orahood accepted it. However, at trial Rozin and Orahood gave conflicting testimony about the substance of that phone conversation. In light of this conflict, it was within the trial court's discretion to reject Derr's claim that an agreement was reached during the call, and our well-established standard of review does not permit us to reweigh the evidence. *See Hazelett*, 119 N.E.3d at 157.

[11] Derr also asserts that the email exchange between Rozin and Orahood following their phone call establishes the existence of an agreement to modify the duration of the lease. To analyze this assertion, we will assume, solely for the sake of argument, that Rozin made an offer to Orahood to modify the lease

during their call.  Given this assumption that an offer was extended, Derr must then still show that Union City accepted the offer.  *See Tchrs. Credit Union*, 2024 WL 5100745, at *6.

[12]  Rozin's email does not refer to any discussion that took place concerning the lease, much less an agreement to modify, but instead states, "I hope you will work with us to terminate our lease 6 months early."  Ex. Vol. 3, p. 16 (Defendant's Ex. A).  According to Derr, the email is just "a summary" of Rozin's phone call with Orahood and is "not a completely accurate representation of what was discussed during the phone call . . . ."  Appellant's Br. p. 10.

[13]  Derr further claims that Orahood's reply email "manifests [Union City's] assent to the early termination[.]"  Appellant's Br. p. 11.  Despite Derr's characterization of the evidence, Orahood's email demonstrates only that Union City acknowledged Rozin's communication of Derr's situation and plans to cease operations, expressed sympathy that their business "took a bad turn," and wished them better fortune in the future.  Ex. Vol. 3, p. 15 (Defendant's Ex. A).  Simply knowing or acknowledging information does not equate to agreeing to it.  Indeed, the acknowledgment of understanding without explicit acceptance does not equate to an agreement to modify a contract, even if the other elements of a contract are present.  *See Tchrs. Credit Union*, 2024 WL 5100745, at *6.

[14] As part of our review, we have examined the parties' trial testimony in addition to their emails. Orahood testified that after he and Rozin exchanged emails in June, it was his understanding that Derr was vacating the building by the end of the year but was going to pay the contract in full. Tr. Vol. 2, p. 9. Orahood further testified that, in their phone conversation, Rozin "said his business wasn't doing well, and he had to pull out of that location to save costs." *Id.* at 25. Orahood confirmed his expectation that Derr would continue to pay the rent after it vacated the premises because "[t]hat's what the contract said" and because Rozin "didn't say he was going to stop paying me, so I assumed he was going to continue to fulfill the contract." *Id.* Moreover, on cross-examination Orahood testified twice, unequivocally, that Rozin did not ask to terminate the lease early during their phone conversation. *See* Tr. Vol. 2, p. 24

[15] For his part, even Rozin did not testify to an explicit acceptance of a modification by Orahood. Instead, Rozin stated he made it clear to Orahood that Derr was in serious financial straits such that it needed to shut down operations and vacate the building and that Orahood's response was "sorry to hear that, man. No problem." *Id.* at 47. Rozin understood Orahood's sympathetic responses to mean that Union City had no problem with "terminating the lease early"—in other words, that Union City would agree to a modification of the duration of the lease. *Id.* at 59.

[16] While the evidence here shows that Union City acknowledged Derr's plans to cease operations and vacate the building an entire year before the end of the lease, that does not constitute, and the evidence does not show, an agreement

by Union City to modify the contract to a shorter lease term. In sum, the elements of a contract modification were not satisfied here by Union City's mere acknowledgment of Derr's unfortunate situation.

[17] The facts and inferences support the trial court's conclusions and judgment. Thus, we cannot say the judgment is clearly erroneous, and we determine, as did the trial court, that the parties did not create a new contract modifying the original lease. As our decision on this matter is dispositive, we need not address Derr's remaining argument concerning consideration to support the new contract.

## II. Damages

### A. Late Fees

[18] Derr alleges the court's award of late fees, insurance premiums, utility bills, and attorney fees is erroneous. A damage award cannot be based on speculation, conjecture, or surmise and must be supported by probative evidence. *Farah, LLC v. Architura Corp.*, 952 N.E.2d 328, 337 (Ind. Ct. App. 2011). "A party injured by a breach of contract is limited in its recovery to the loss actually suffered[] and may not be placed in a better position than the party would have enjoyed had the breach not occurred." *Ind. Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 368 (Ind. Ct. App. 2008). "'[D]amages must be proven with reasonable certainty[,]'" and the plaintiff has the burden of proof. *Id.* (quoting *Noble Roman's, Inc. v. Ward*, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002)).

[19] On appeal, we are limited in our evaluation of a damages award, which we review for abuse of discretion. *Ind. Bureau of Motor Vehicles*, 895 N.E.2d at 368. We will not reweigh the evidence or assess the credibility of the witnesses, and we consider only the evidence favorable to the award. *Farah, LLC*, 952 N.E.2d at 337. We reverse an award of damages only if it is not within the scope of the evidence of record. *Id.*

[20] Here, the trial court's judgment included an award of $9,950.00 in late fees of $50 per day for 199 days from December 16, 2019 through July 2, 2020 for the unfulfilled term of the lease. The court also awarded $53,750.00 in late fees of $50 per day for 1,075 days from July 3, 2020 (the day after the lease expired) through June 13, 2023 (the date of the bench trial). Derr challenges the propriety of the late fees for the period beyond the term of the lease.

[21] This Court previously addressed this precise issue in *Gershin v. Demming*, 685 N.E.2d 1125 (Ind. Ct. App. 1997). There, we tackled the question of whether the trial court erred when it awarded a per diem late fee for the period between the expiration of the lease term and the date of judgment. We began by ascertaining whether the late fee provision in the lease was a valid liquidated damages clause or an unenforceable penalty. This is a pure question of law for the court, and we consider the facts, the intention of the parties, and the reasonableness of the provision under the circumstances of the case. *Id.* at 1128. When the sum stipulated in the agreement as liquidated damages is "grossly disproportionate" to the loss that may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages. *Id.*

"A valid late fee in a lease is intended to compensate the landlord for both the administrative expense and inconvenience in collecting late rent and the loss of use of rental income." *Id.* A late fee may also serve as an incentive for the tenant to pay rent on a timely basis. *Id.* However, there is a limitation on the useful life of a late fee provision, and it occurs when the lease term ends and late payment becomes nonpayment. *Id.* at 1129. At that point, "the tenants are no longer in possession of the premises, the rent remains unpaid, the parties no longer have a landlord-tenant relationship[,] and the landlord has no further expectation of voluntary payment." *Id.* Accordingly, the landlord's damages are no longer uncertain or difficult to ascertain, and the continued assessment of liquidated damages becomes a penalty. *Id.*

Here, the court awarded Union City post-lease late fees of $53,750.00 for 1,075 days between the end of the lease period and the date of the bench trial. These late fees are more than twice the amount of the unpaid rent of $23,244.00 and are grossly disproportionate to Union City's actual loss from late rental payments. As we did in *Gershin*, we hold here that the daily late fee should not have continued to be assessed after the expiration of the term of the lease because, by that time, actual damages could be ascertained, and the fee became a penalty rather than liquidated damages. *See id.* at 1129. Therefore, the award of such late fees constitutes an abuse of discretion.

## B. Insurance and Utility Payments

Next Derr challenges the sufficiency of the evidence supporting the court's award of unpaid insurance premiums and utility bills.

[25]    At trial, Union City initially represented that Derr had failed to pay $4,426.30 for insurance.  Orahood first testified "it was about that amount."  Tr. Vol. 2, p. 21.  On redirect, counsel asked Orahood how much insurance Derr owed, and Orahood responded:  "I think they owe the [$]8,852."  Tr. Vol. 2, p. 39.  And on cross examination on the court's questions, Orahood was asked and testified as follows:

> Q.  Back to the, let's see, page 2 of the lease, the Operating Costs that we just talked about.  So insurance premiums should have been due quarterly, 3/15, 6/15, 9/15 and 12/15.  Did you invoice for those?
>
> A.  Yes.
>
> Q.  Okay.  And what's your recollection of 2019 what they would have paid of those four installments?
>
> A.  I believe they paid the installments until they stopped paying the installments.  I don't know the dates of what they paid and when they paid here, but I know they paid an insurance premium.  I know they paid taxes, but I don't remember how many of those payments they made at this point.
>
> Q.  Okay.  So how can you say what you're owed if you can't say what they paid?
>
> A.  That's why I wrote the record.  You know, I put down what I estimated and I think they owe, probably, twice that, but --
>
> Q.  But you're not sure what they paid?

A. Not sitting here, I'm not.

*Id.* at 41-42. The court ordered Derr to pay $8,852.60 in unpaid insurance premiums for the period of December 2019 through June 2020. Appellant's App. Vol. 2, p. 22 (Judgment).

[26] Orahood could only speculate as to the amount of unpaid insurance premiums, and in the end, he admitted he did not know what amount was left unpaid. The evidence supporting the court's award of damages for insurance premiums is based on speculation, conjecture, and surmise. Thus, the evidence falls short of Union City's burden to prove its damages with reasonable certainty. *See Ind. Bureau of Motor Vehicles*, 895 N.E.2d at 368. For that reason, we conclude the trial court abused its discretion by ordering Derr to pay $8,852.60 for insurance premiums.

[27] Union City also requested $3,000.00 for utilities. Concerning these damages, counsel asked Orahood: "Utility costs, again, did you -- is that -- $3,000, is that what you actually had to pay to -- for the utility bills during the time [Derr] were supposed to be there?" Tr. Vol. 2, p. 23. Orahood responded, "Yes." *Id.* Orahood did not waver in his response, and the amount was not addressed further. The court did not abuse its discretion by ordering Derr to pay $3,000 for utility costs.

## III. Attorney Fees

[28] Finally, Derr argues the court's award to Union City of $20,000.00 in attorney fees was an abuse of discretion. The parties' lease provides that the prevailing

party is entitled to reasonable attorney fees in any legal action arising thereunder. *See* Appellant's App. Vol. 2, p. 43 (Lease, ¶ F).

[29] Parties to litigation generally pay their own attorney fees but may agree by contract to do otherwise. *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Where, as here, parties include a contractual provision agreeing to pay attorney fees, that agreement is enforceable according to its terms unless the contract conflicts with law or public policy. *Id.* Even under a contract, an award of attorney fees must be reasonable. *Corvee, Inc. v. French*, 943 N.E.2d 844, 847 (Ind. Ct. App. 2011) (quoting *Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 951 (Ind. Ct. App. 2006)). The amount awarded for attorney fees is left to the sound discretion of the trial court. *Fischer v. Heymann*, 12 N.E.3d 867, 874 (Ind. 2014) (quoting *Dempsey v. Carter*, 797 N.E.2d 268, 275 (Ind. Ct. App. 2003), *trans. denied*).

[30] Orahood testified at trial that Union City paid $20,000.00 in legal fees. Tr. Vol. 2, p. 22. Derr complains there was no showing that the trial court considered any factors with respect to the reasonableness of the award. When determining the amount of reasonable attorney fees, "the trial court may—but is not required to—consider 'such factors as the hourly rate, the result achieved . . . and the difficulty of the issues.'" *Shoaff v. First Merchants Bank*, 201 N.E.3d 646, 659 (Ind. Ct. App. 2022) (quoting *Fischer*, 12 N.E.3d at 874). The trial court received evidence of Union City's legal fees and, in its discretion, concluded that amount is reasonable. We find no error.

# Conclusion

The record supports the trial court's findings and conclusions on the absence of a modification to the parties' lease. However, the court abused its discretion by assessing late fees after the expiration of the term of the lease and by ordering Derr to pay $8,852.60 for insurance premiums. The trial court acted within its discretion in ordering Derr to pay $3,000 for utilities and in determining that $20,000.00 was a reasonable attorney fee.

Affirmed in part, reversed in part, and remanded for adjustment of the damages award in accord with this opinion.

Bailey, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Christopher J. McElwee
Monday McElwee Albright
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Christopher P. Jeter
Massillamany Jeter & Carson LLP
Fishers, Indiana